My name is Jeffrey Feiner. I'm appointed counsel for the defendant, Kenyon Lyle, and I would like to reserve two minutes. This case challenges whether the indictment counts three and nine, whether they failed to state an offense as alleged. As alleged in the superseding indictment and as set forth in the plea agreement to which Mr. Lyle gave his conditional plea, the facts set forth in the indictment and in the plea agreement fail to meet the requirements for tampering for consumer product. Essentially, these facts cannot constitute the offense of tampering. The means as charged were basically as follows, and Your Honor, the facts are fairly simple. Mr. Lyle's a pharmacist in a Safeway, and when no one's watching, he opens up boxes of fentanyl patches, which he's taken out of secure storage. He removes the fentanyl patches from the boxes. He reglues the boxes and then puts them back in secure storage. He's charged, however... So why didn't he tamper with the container? How did he tamper with it? Why didn't he tamper with the container? Well, because tampering seems to require, under the case law and under the congressional amendments, it requires adulteration of a product, not just theft. But it covers the container. And so why didn't he, I don't know if the word's adulterate, but he took a container that looked that was an unopened manufacturer of pristine container, and he opened it, and then he made it look like it was back to its original state, but it wasn't in fact. Yes. So he represented something as something it wasn't, and by manipulating it. So why isn't that tampering? Well, if it goes to, if we're talking just about the box itself, we look to the amendment in 2002 from Congress. And in 2002, Congress said essentially that the state of the law was it was, the contract was unregulated if it neither adulterated the product nor altered the labeling. And so Congress may alter it. Well, it doesn't say, I mean, they may have said that, but it's not true because there's a separate word. It covers labeling, but also container. Yes. Right. So whatever they said about it, you still have to look at what the statute says. Except the container's not what was altered or changed. The container's unchanged. Yes. Well, they opened it, they broke the seal. Yes, he did. And he put some tape over it. Well, that's not in our facts, actually. Well, he closed it up. He closed it up so that it would on visual inspection not appear to have been changed. He didn't insert any text. So he tampered with the container. I don't think so. Not as the word tampering has been used in the cases that we can find on this point. Now, I realize it seems very technical, but I have to take the text of the statute and I have to look at the text and ask what does tampering mean? You're not complaining about, I mean, to me, if there's a problem here, it's really how he placed in danger of death or bodily injury. But there's other, you haven't challenged that here. Well, the statute specifically says bodily injury can be the continuation of pain. The statute doesn't say that at all. I mean, there are some case lines and other surfaces, isn't there? Actually, bodily injury is defined, Your Honor, in the statute, and it would appear to cover that circumstance. I appreciate the Court's concern on that, but I don't think it's fruitful. If you don't get the medicine that you're supposed to have, it has been interpreted to constitute bodily injury. I think the bodily injury is foreclosed. But the question that I'm concerned about is if you don't adulterate and you don't change the container in any visible way that's alleged in these facts, if the container simply is back on the shelf, buddy, it's empty, that's theft. That's concealment of a theft. But I don't see how it comes under tampering. It isn't only theft because, I mean, I think you have a nice question here. No, I understand. But it's not only theft because the problem that was, if he had just taken it, that would have been theft. Agreed. All right? He didn't just take it and walk out the door with it. He made it appear that there was something left to sell and it was, in fact, sold. Correct. So it's concealment. Does that constitute tampering? And that was the issue that I raised below. I parsed out the four verbs. I said either singly or altogether. Again, it wasn't only concealment because it was putting it in a situation in which it would appear to be in a position to be sold to others and it was sold to others. So it wasn't simply that he was concealing it from the people he was stealing it from, but he was putting it in a situation in which it would be regarded as a box of pills and sold as such even though it wasn't. Unclear in this record whether an empty box could be reasonably sold by an unharied patient, a pharmacist picks up an empty box and thinks there's something in it. That's not clear in this record. But, Judge, what I'm saying is concealment is ñ It apparently happened more than once, no? No. No, no, no, no. Only one person ever received an empty box. All the other empty boxes were in inventory. Check, in inventory, in inventory. And they weren't discovered until they were open. Here's the point I think the Court's asking me. Is putting it back on the shelf more than concealment? Is it tampering? Is it trying to ñ does it meet the statute, and in particular the amendment in 2002 for tampering of the container? And that amendment talks about inserting text into the container, putting some kind of vicious message in the container. Your Honors, this could be something that Congress could decide, but it hasn't. Explain to me. There's a box, a carton? Yes. A cardboard box. Is there a bottle in the box? No. First of all, there are patches, so they're thin little ñ Patches, okay. Yes. In an aluminum-type casing, there's some product information. None of this is in our ñ But there's nothing inside the carton. Correct. Except the patches. Except the product information. So he took the patches out of the carton, put the carton back together, and put it back on the shelf. That's what he did. And it would be theft. It would be concealment of the theft. But if he doesn't adulterate the medication, if he does not alter the package labeling or insert text into the package ñ The statute treats the labeling as different from tampering with the product? No, it's not. It's the same statute, and it's by virtue of 2002 amendment. I mean, it's in the same statute, but there's different language. Correct. There's a different phrase where it refers to the container and the packaging. And so we understand that Congress was looking at an entirely different evil than was committed here. But if it covers it, if it's fairly covered, I understand that when Congress sets forth text, if it goes into a direction they don't anticipate, we still interpret it the way the text says. And I'm looking at the text. And here's what I find Justice Scalia says that we're doing. This is my analogy. He describes purpose of this purpose. I can't say this well. I have a split lip. I'm sorry. But the problem is this. When we abstract behavior to higher and higher levels of abstraction, Justice Scalia calls it climbing the ladder of abstraction, at some point you've gone too far. And that's the tough call I'm asking you to make. Well, tell me specifically how would you interpret the term tampers with a container? What is tampering that this is not? It appears to be changing the label or, Congress says, adding text into the box that's unauthorized. Now, where do you get that from? The legislative history? No, I actually get it from the amendment that states that. I'm just looking at the statute 1365. Oh, I see what you're saying. Yes. I specifically get that from PL 107-307, which describes that Congress said focusing on tampering has been the problem in the past. It has left unregulated, quote, conduct which neither adulterated the product nor altered the labeling. And that's what they wanted to fix in 2002. They said altering the labeling wasn't an offense. It is after 2002. I thought that provision deals with, I mean, it doesn't seem relevant to me to anything, first of all, because we have the statute that we have. And what Congress said about it years later really doesn't matter. But second of all, that didn't deal with what section of the statute is that now? C. F? Is that what it is? Right. And that is F. And that provision has nothing to do with the danger of death or bodily injury circumstance here, right? That goes to a mens rea. It has to be done with a requisite. In other words, it dealt with things other than drugs, really. I agree. And so it was really more dealing with ‑‑ so it wasn't dealing with the tampering provision at all. It was dealing with the TAGE provision or some other provision, but not with the one that covers tampering, right? It doesn't appear to me to deal with tampering in the way we think of the word tampering. It specifically says tamperings covered adulteration of the product, and we're changing for tampering, we're referring to adding text. Judge, they didn't do either. Or Mr. Lyle did not do either. You've spent enough time. You've got five seconds. Thank you. Thank you. May it please the Court, Alexander X from the Assistant United States Attorney on behalf of the appellee, United States of America. You're on to deal with Judge Berzon's question first regarding the 2002 amendment. The government would submit that it's reasonable looking at that amendment to come to the conclusion that it is, to the extent that it's a gloss on the statute at all, only a gloss on subsection B, specifically because it refers to an action that renders the labeling false or misleading, and in that context, the use of the word adulteration clearly references the word taint in subsection B, and it's not a gloss on the word tampering, which appears in subsection A. And, again, at the end of the day, the defendant committed an act in which he opened a manufacturer's box, which is clearly a container, removed the items there from, and re-glued the box. Again, moving out of a Rule 12 analysis, looking at sufficiency. Well, suppose he'd done that and left everything inside? If he had opened the box and left everything inside, it would not. . . He wouldn't have the men's ray, is that it? It might be tampering, but you wouldn't have the men's ray? Yes, you don't have the creation of the risk and the reckless disregard that an individual may be subjected to bodily injury, which is defined in subsection H of the same statute as pain. If somebody comes and steals some drugs out of your medicine cabinet, I understand it wouldn't violate the statute, but would it be considered to cause a bodily injury? That's the part of the statute I find difficult. I don't understand why taking somebody's drugs such that they can look and see they don't have the drugs is causing them a bodily injury. In this instance, and that is addressed by Cunningham and Garnett, where the individuals in that case, and Mr. Lyle in this case, not only diverted the controlled substance, but engaged in acts that would conceal to the consumer before they exited the stream of conversation. But the difference in those cases is they thought they were getting the medicine, and they took it thinking they were getting it, presumably. But here, I mean, they immediately knew that she wasn't getting the medicine. I mean, as soon as she opened the bottle, there was no medicine. So she, so it seems to me it is to that degree like theft. And I'm asking, and this isn't being challenged, so it's probably by the boards in this case. But insofar as this case makes one uneasy, I think it's because I have a hard time seeing that that's causing a physical injury. Let me attempt to answer that concern. And again, it goes to the facts as laid out in the plea agreement in, I believe, Excerpt of Record 84 through 86, where in this instance, the patient goes to the pharmacy, is dispensed the sealed boxes, which have been resealed. They contain the instruction material, which is similar in weight to the patches, and the box itself. What they're missing is what was described as about a third of the weight, and we're looking at the difference between U.S. letters, not heavier weights. The pharmacist, in good faith, dispenses the item. The patient takes the medicine home. She has recently been issued a new medication because her prior medication was not controlled. The only reason that this ended up with, that she really ended up with any significant delay, was because they didn't believe her when she said that she'd bought an open bottle. But, I mean, that's kind of an irrelevancy in terms of the violation here. I mean, you think ordinarily she'd just go back, she'd say, look, this is what I've got, and give her a whole bottle, so she's lost an hour. But that's different than getting make-believe IV. In this instance, there's a presumption of regularity in dispensing, be it from an IV or be it for a sealed box that comes to the end consumer. In both instances, the end consumer, who doesn't get the pain medication, will be accused of being a drug seeker, as this victim was, and will have a delay before they're believed and, in the interim, suffer pain. Okay. Could you help me with, maybe I'm not reading the statute correctly. But it's, the statute, as I understand it, says, whoever with reckless disregard, et cetera, tampers with any consumer product that affects interstate or foreign commerce, or the labeling or container for such product. Yes. Now, so the tampering has to be with the product, right? There are three independent means with which one can violate the statute, the tampering with the consumer product itself, the labeling therefore. Was there tampering with the labeling here? Or the container? Is that the theory? The theory is the container. And, again, looking at, and, again, the government would argue that we're outside of Rule 12 in looking at sufficiency of the evidence, which was the Garnett and the Cunningham. But, nonetheless, in that instance, what happened was there was the container or manufacturer's box was re-glued with a glue that did cause a change to the package, but the government doesn't believe that that is required. The opening and re-gluing is a change in operation. That's the government's theory, but it's not the taking of the product. It's the re-gluing the box? It is the resealing of the empty box. And also the government would submit that in the alternative, that the court could find that there was a tampering with the product under the rationale of Garnett and of Cunningham. In Garnett, there was a partial substitution. In Cunningham, the entirety of the Demerol was removed from the syringe and replaced in its entirety with saline. And, again, there are differences in medications that are to be injected and there are medications to be dispensed. But the end consumer at the end of the stream of commerce finds himself in the same position, no medication. But in that instance, I mean, it seems to me, well, I keep getting sidetracked onto this question of where's the injury. But in that instance, I mean, there's all kinds of possible injuries. I mean, the person thinks they're getting and their providers think they're getting actual medicine, but they're not responding. So then they give them more medicine, which can be dangerous. In the Garnett case, I didn't understand that case at all, because there they actually did tamper with the medicine he did put in there. He took off the identifying information. And not only that, he put other medications in there, which this person wasn't supposed to be getting and, therefore, was taking. So they're very different kinds of cases in terms of both what the degree of alteration was and what the danger is. And, Your Honor, perhaps I misread the case. But the government believes that in that instance, and perhaps it's not a point that's significant to the court's concern, that the original hydrocodone tablets were not altered in any way. And I believe the court said that. No, I know they weren't. But what they put in there was. So why isn't that good enough? And it was. And, again, the government believes that the case is simply resolved on the container. Are you conceding that this was not tampering with the product within the median? No. The government believes that the court could also find tampering with the product under the argument that I've made under Garnett and Cunningham. But, again. Could you repeat the argument? I don't see how you're tampering with the product. The product just wasn't there. If one looks at the other potential, that Mr. Lyle had taken the fentanyl transdermal patch out of its container, applied it, used all of it, and placed it back in there, the individual and recipient when they get home is still going to be without medication, would be without medication just as they were here. Yeah, but that's not. I mean, but you have to look what the statute prohibits. It prohibits tampering with a product, not taking a product. And in this instance, the government would submit under Cunningham and Garnett that the reduction in efficacy is the focus. And in this case, if partial reduction in efficacy is sufficient, total reduction in efficacy should be as well. To what extent do we take the facts in the plea agreement, the consideration in evaluating the Rule 12? Not at all. Not at all, right? Not at all. And the government would submit as the district court properly found the indictment to track the statute, laid out facts that in the district court's mind substantiated a tampering with the container itself and that that ended the inquiry. Okay. I have nothing further unless the Court has questions about that. No, thank you. You've got to make this really quick. I think the facts can only come from the indictment, but even if you look at the plea bargain itself, the plea agreement has no further facts that would aid the Court. We're clean on this record. Lastly, I just want to make this point. The 2002 amendment does get passed with the knowledge of the previous cases interpreting tampering. That's one thing we do know about statutory construction, that Congress is presumed to know the previous interpretations. Here's what Congress said. The state of the law in 2002, without the amendment, left unregulated conduct which neither adulterates the actual product nor alters the labeling. And so they passed a ruling. Again, they may have said that, but the statute says specifically the container. So they were just confused. Tampers. And this is the gloss on the word. But the question isn't what tampers means. It's tamper with what. And the statute, as originally written, mentioned the container. So if they thought it didn't, they didn't read it right. I think it means tampers with what, but also what does tamper mean? Because Congress is clear. Tamper means to change the product, to alter the product. Excuse me. I beg your pardon. To adulterate the product, alter the labeling, or insert text. He did none of those three things. Thank you. Okay. We got it. Thank you. Thank you, counsel.
judges: Schroeder, Paez, Berzon